**STATE of Missouri,**
**Plaintiff-Respondent,**

v.

**Lamont GRIFFIN, Defendant-Appellant.**

No. 46740.

Missouri Court of Appeals,
Eastern District,
Division Four.

April 30, 1985.

Motion for Rehearing and/or Transfer to
Supreme Court Denied June 5, 1985.

Frederick M. Steiger, St. Louis, for defendant-appellant.

John Ashcroft, Gary L. Gardner, Jefferson City, for plaintiff-respondent.

SNYDER, Judge.

Lamont Griffin appeals from a judgment convicting him of capital murder in violation of 565.001, RSMo.1978 (repealed 1983). A jury found him guilty and assessed his punishment at life imprisonment without probation or parole for 50 years. The court ordered him committed to the Missouri Division of Correction accordingly. The judgment is affirmed.

The appellant charges the trial court erred: (1) in denying appellant's motion to suppress the police officer's testimony relating to appellant's alleged oral confession; (2) in denying appellant's motion during the trial to produce the original text of the police officer's handwritten notes of appellant's confession; (3) in submitting in-

struction MAI–CR2d 15.12 modified by MAI–CR2d 2.12; (4) in submitting MAI–CR2d 2.71 out of order; and (5) in refusing to give jury instruction MAI–CR2d 3.42 on circumstantial evidence.

The events which culminated in the death of Steven Mayhew began when he and his roommates decided to have a "back to school" party at their apartment for some of their fellow St. Louis University students on September 18, 1981. Early in the morning on September 19 a man entered the front door of the apartment carrying a rifle and announced a robbery. Mayhew said to the intruder, "What the hell's going on?" The intruder responded by shooting Mayhew who died the following morning from the wound and loss of blood.

About the time Mayhew was shot, a second man carrying a rifle and a handgun entered the back door of the apartment. The second man threatened to kill any partygoers who did not give up their jewelry and money.

He ordered one of the guests, Mike Marshall, to go upstairs and turn off the stereo. One of the miscreants went upstairs with Marshall who turned off the stereo. The robber then demanded guns and when Marshall informed him that there were none, the robber fired a shot which slightly wounded Marshall. After the robber went back downstairs, Marshall leaped out the window and ran for help. The police arrived within minutes and took charge of the scene.

Of the eight eyewitnesses to the robbery and shooting, four positively identified Griffin as the man at the front door who shot Mayhew, and one said Griffin was either the man at the front or the back door.

Police recovered the gun which fired the fatal shot from the nearby residence of Rosie Jackson, appellant's mother. The gun was an unusual calibre, 44–40, and one of the officers had seen a gun of that calibre at the Jackson house some weeks earlier.

After the crime appellant fled to California. Detective Sergeant Riley of the homicide division traveled to the Los Angeles County Jail to interview Griffin. Riley took tape recording equipment with him, but was not permitted to use it within the jail.

Riley testified that he advised Griffin of his rights and Griffin indicated he wanted to make a statement about his involvement in the incident. Riley took notes in longhand of Griffin's oral statement as Griffin was speaking. Detective Riley explained that he asked Griffin questions and then wrote down the answers. In his oral statement Griffin admitted participating in the robbery, but accused his accomplice of the shooting of Mayhew and Marshall.

Riley testified that Griffin did not sign his, Riley's, notes of Griffin's statement, but that Griffin did swear that what he said was the truth. A Los Angeles detective also testified to the method of taking the oral statement and that Griffin had sworn to the truth of what he said. Griffin testified and denied he ever confessed to the incident.

Appellant first asserts the trial court erred in denying his motion to suppress his oral confession because the state had violated the applicable rules of criminal discovery. The state failed to provide to appellant, prior to trial, a copy of Detective Riley's handwritten notes of the oral confession. The point is denied.

■ No rule of criminal discovery in Missouri requires that the prosecution provide the defendant with a copy of a policeman's handwritten notes. Rule 25.03(A)(2) states:

(A) Except as otherwise provided in these Rules as to protective orders, the state shall, upon written request of defendant's counsel, disclose to defendant's counsel such part or all of the following material and information within its possession or control designated in said request:

(2) Any written or recorded statements and the substance of any oral statements made by the defendant or by a co-defendant, ...

The rule requires the disclosure of only the substance of any oral statement by the defendant.

The state did disclose the substance of appellant's oral confession. Prior to trial, the state provided the appellant with the police report which contained Detective Riley's account of appellant's oral confession. There was no substantial difference between Detective Riley's handwritten notes and the pertinent portions of the police report. The report disclosed the "substance" of appellant's oral confession.

Appellant relies on *State v. Scott*, 479 S.W.2d 438 (Mo. banc 1972), *State v. Harrington*, 534 S.W.2d 44 (Mo. banc 1976), and *State v. Buckner*, 526 S.W.2d 387 (Mo. App.1975) in arguing that the trial court abused its discretion. All three of these cases can be distinguished.

In *State v. Scott, supra,* defendant requested disclosure of the substance of an oral statement both prior to and during trial. Yet neither the police report nor the detective's notes were ever provided for inspection. The substance of the oral statement was not disclosed. The Missouri Supreme Court found this fundamentally unfair.

In *State v. Harrington, supra,* the state's failure to produce the substance of oral statements by the defendant, after being so ordered by the trial court, was held fundamentally unfair.

In *State v. Buckner, supra,* the court held the non-disclosure of defendant's written and signed statement deprived defendant of a fair trial.

■ In the case under review, the police report containing the substance of appellant's statement was disclosed prior to trial, and a copy of the officer's handwritten notes was disclosed during the trial. The trial court went even further than required by Rule 25.03(A)(2) in ruling that the state provide the appellant with a photocopy of Detective Riley's handwritten notes. There was no fundamental unfairness.

■ Assuming for the sake of argument that the trial court improperly denied appellant's motion to suppress, the trial court will be reversed only if the trial court's failure to order production resulted in fundamental unfairness. *State v. Royal*, 610 S.W.2d 946, 951[10–13] (Mo. banc 1981).

In *Royal* the state did not comply fully with discovery rules, as it did in this case. The court still held the trial court did not abuse its discretion because defendant failed to show any impact on the outcome of the trial. "The notion of fundamental unfairness in turn is to be measured by whether the evidence or the discovery thereof would have affected the result of the trial." *Royal*, 610 S.W.2d at 951.

■ Appellant did not demonstrate that admitting Detective Riley's testimony had any impact on the outcome of the trial. Four eyewitnesses testified that appellant fired the fatal shot. Because there was no fundamental unfairness, the judgment will not be disturbed.

The appellant's second contention is that the trial court erred in denying appellant's motion to produce the original text of Detective Riley's notes of appellant's confession, instead of the photo copy which the state gave to appellant in the course of the trial. Defendant's request for the original notes was properly denied. Under Rule 25.03(A)(2) all that is required is the "substance of any oral statements made by the defendant." The state complied with the rule when it provided appellant with a copy of the police report.

This court held that if the state provided defendant with a typewritten report which was consistent with the handwritten notes of the police officer's interview from which the officer prepared his report, the state had complied with defendant's discovery request. *State v. Parker*, 543 S.W.2d 236 (Mo.App.1976). Here the state went further and provided appellant with a copy of the handwritten notes.

The appellant contends he required the original of the notes rather than a photocopy. Appellant made an offer of proof that a handwriting expert would determine whether the notes were written by Detec-

tive Riley at a time earlier than or subsequent to the time of appellant's statement.

The examiner selected by the appellant testified in the offer of proof that she had never previously examined any document to determine whether or not the writing was done continuously. The examiner was not even certain whether this determination could be made.

The trial court denied appellant's offer of proof and ruled that the state was not required to supply the officer's original notes. Appellant has cited no authority, and this court has found none, to support the right demanded by appellant to subject a police officer's original notes to examination by a handwriting expert to determine the time they were written, particularly when the expert, as she did here, expresses doubt about her ability to make the determination. Therefore, appellant's point is ruled against him.

An extended discussion of appellant's remaining three instructional points would have no jurisprudential value. They are summarily denied. Rule 30.25(b).

The judgment is affirmed.

SMITH, P.J., and SATZ, J., concur.